Yazoo & M. V. R. R. *v.* Sanders.

[72 South. 144.]

CARRIER. *Carriage of passengers. Mistreatment of passengers.*

Under the facts as set out in this case the court held that as to whether or not the appellee, a passenger, was mistreated in the manner claimed by him was a question that should have been submitted to the jury.

APPEAL from the circuit court of Boliver county.
HON. W. D. CUTRER, Special Judge.

Suit by Newell Sanders against the Yazoo & Mississippi Valley Railroad Company. From a judgment for plaintiff, defendant appeals.

*E. M. Yerger, H. D. Minor* and *Mayes, Wells, May & Sanders,* for appellant.

*Thos. S. Owen* and *Percy Bell,* for appellee.

SMITH, C. J., delivered the opinion of the court.

This is an appeal from a judgment for damages awarded appellee alleged to have been sustained by him at the hands of appellant's ticket agent at Shaw, Miss.

At the close of the evidence the court peremptorily instructed the jury to find for the plaintiff, submitting to him only the amount of damages to be awarded. The case made by the evidence introduced by appellee as stated in the brief of his counsel is that:

"On November 29, 1911, Newell Sanders went to the depot of the appellant in the town of Shaw, Miss., for the purpose of becoming a passenger of the appellant and did become a passenger and leave Shaw on one of its passenger trains which was due to arrive at Shaw about 9:20, going to Greenville. What occurred is told by the plaintiff at page 12 of the transcript as follows: 'November 29, 1911, I was at Shaw and I come to the train and I passed by the window; I thought the agent was not there. I looked in the window and didn't see any one but the agent in there, and I goes to the sitting room directly after I got there; opened ticket office and I walked up to the window and called for a ticket to Greenville. There was several more people in there buying tickets ahead of me. I seen several of them give the depot agent—and I called for ticket, and he throws me a ticket, and I give him one dollar, and he gives me fifteen cents back, and I wanted my

change, and directly he come back to the window and asked me what I wanted. Q. Did you know him? A. I learned his name afterwards. At the time I told him to give me my change he cussed me out and said, "You black son of a bitch, get back and let somebody else get there." He called me all kinds of a son of a bitch and called me a black son of a bitch—get back and let somebody else get up there.'

Appellee was corroborated in this statement. Appellant's ticket agent was placed upon the stand and testified, among other things, as follows:

"Q. Do you remember November 29, 1911, the circumstances of Newell Sanders, the plaintiff in this case, coming and buying a ticket with a lot of other negroes for the train going south? A. No, sir. Q. Did you ever see this negro, Sanders? A. I seen the negro, but I never heard him called Henry Sanders before. Q. What was he called? A. Singtom: that's all I ever heard him called in my life. I never heard him called Sanders. Q. Called him Singtom? A. Yes, sir. Q. What was he doing at Shaw? A. He was working at the plumbers' trade at Shaw; what he claimed to; I never saw him do any work. O. What did you ever see him do—work of any kind? A. I never seen him do any kind of work; only lay around there. Q. You had been around there how long? A. I was there about a year; been around Shaw for the last four or five years. Q. Were you agent at that time or not? A. At that time I had been agent for about six months. Q. What did you do before that? A. Worked in the drug store. Q. You knew him? A. Knew him when I saw him. Q. Do you remember his coming to the window or not to buy a ticket to Greenville that night? A. No, sir. Q. Do you remember the circumstances of a large number of negroes being there that day and going off on that train or not? A. No, sir. Q. Do you remember anything about the circumstance? A. No, sir. Q. Do you remember of any trouble that you

had with this negro? A.    No, sir. . . Q. What recollection, if any, have you on this negro buying a ticket to Greenville? A.    If he ever bought one I don't know it.    Q.    What recollection have you of giving him back any less than his proper change? A.    If, he bought one I don't remember it.    I gave him back the right change if he bought one.    I don't think he bought one.    Q.    How would you know it?    A. I know him. I have seen him.    Q.    I want to know how it is that you know that to be a fact.    Let me understand how he knows that to be a fact.    The Court: All right.    Q. How do you know that is a fact?    A. Because I always give back the right change if I sold a man a ticket; if I didn't have the right change I would make the porter go and get it.    Q.    What recollection have you of anything occurring at all?    A. I don't remember of him buying a ticket there.    If he bought a ticket there that night he would have got the right change.    Q. What recollection have you of having called this negro a son of a bitch?    A. I never called him a son of a bitch in my life.

"Objection by counsel for the plaintiff to the answer as not being responsive.

"The Court:    He says he never sold this negro a ticket.

"Mr. Owens:    We have no objection to his contradicting our witness if he can.    If he has no recollection, therefore he doesn't know.

"The Court: That is what I think is the rule."

On this evidence we think that whether or not appellee was mistreated in the manner claimed by him was for the determination of the jury; consequently, the peremptory instruction should not have been given.

*Reversed and remanded.*

Sykes, J., took no part in the decision of this case.